**UNITED STATES FEDERAL DISTRICT COURT
DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **CHERYL A. MILLER,** an individual,<br><br>Plaintiff, | | Case No. 8:16-cv-____ |
| v. | | |
| **PHYSICIANS LABORATORY SERVICES, INC.**, a Nebraska corporation,<br><br>Defendant. | | **COMPLAINT**<br><br>(Jury Trial Demanded) |

**INTRODUCTION**

1.      Plaintiff Cheryl A. Miller ("Ms. Miller") is a 56-year-old female, born on May 17, 1960.  Ms. Miller was employed as Histology Supervisor by Defendant Physicians Laboratory Services, Inc. ("PLS") beginning February 11, 2006.  Over nine years later, after nearly a decade of exemplary service, PLS forced Ms. Miller to resign by harassing her, intimidating her and discriminating against her due to her age and sex.

2.      PLS' Director of Marketing Kasey Moreland harassed Ms. Miller for years during her employment with PLS.  Moreland was given preferential treatment, based on her relationship with Dr. Blaine Roffman.  Since 2013, Moreland made decisions outside the scope of her authority and which were intended to frustrate on a daily basis and to detrimentally affect Ms. Miller's job performance.  Moreland influenced PLS' President and Director Dr. Robert E. Bowen into firing Ms. Miller.

3.      Ms. Miller's job performance was satisfactory throughout her employment as PLS' Histology Supervisor. Ms. Miller was never disciplined for her job performance. On January 6, 2015, Ms. Miller's supervisor, Medical Director Dr. Blaine Roffman, called Ms. Miller into his office.  There, Dr. Blaine Roffman and Rick Noda (PLS' IT Supervisor and compliance) told Ms. Miller she was demoted and being replaced by a younger male as PLS' Histology Supervisor.  PLS never told Ms. Miller what her new job title would be, she was only informed that she would be doing the duties of her previous subordinates.

1

4. PLS replaced Ms. Miller as Histology Supervisor with Jason Gerriets, a male under age 40 when hired by PLS. When Ms. Miller's was Histology Supervisor her annual salary was $62,920.00. PLS hired Gerriets at $78,000.00 starting annual salary.

5. On April 24, 2015, slightly over three months after Ms. Miller's demotion, PLS gave her a 60-day review of her performance in her demoted position. During the 60-day review, PLS informed Ms. Miller her wages were being reduced by $4.25 per hour. Ms. Miller gave two-week notice of her resignation on May 15, 2015 due to PLS' continued harassment, intimidation and discrimination. Ms. Miller's last day at PLS was May 29, 2015.

## VENUE & JURISDICTION

6. This matter arises under federal and state law. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 based on Ms. Miller's federal claims in this Complaint. This Court has supplemental jurisdiction of the Nebraska state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because the acts forming the basis for this Complaint were orchestrated from, planned in and conducted in this District.

## PARTIES

8. Ms. Miller is a Caucasian female, age 56. She is a citizen and resident of Omaha, Nebraska. PLS employed Ms. Miller and she worked in PLS' Omaha, Nebraska office for over nine (9) years.

9. PLS is a Nebraska Corporation located at 4840 F Street, Omaha, Nebraska, 68117. PLS has engaged in anatomic and clinical laboratory services since 1955. PLS is a closely-held corporation: Dr. Robert E. Bowen is President, Secretary and a Director, and Dr. Rodney K. Koerber is Treasurer and a Director.

## FACTUAL BACKGROUND

10. PLS hired Ms. Miller over 10 years ago, on February 11, 2006. Ms. Miller spent nearly her entire career at PLS as a Histology Supervisor. As Histology Supervisor, Ms. Miller embedded microtomy, performed hematoxylin and eosin staining, and executed quality control and proficiency testing.

11.     Ms. Miller's job performance was excellent at all times she was employed by PLS as its Histology Supervisor.  She was never disciplined for her job performance.

12.     Kasey Moreland ("Moreland") was PLS' Director of Marketing during Ms. Miller's employment.  In 2013, Ms. Miller and Moreland had a disagreement about microfilming.  From the time of the disagreement until Ms. Miller's resignation, Moreland harassed Ms. Miller and made business decisions intended only to frustrate Ms. Miller's job performance.  Moreland also used her influence with PLS' President and Director Dr. Robert E. Bowen to have Ms. Miller terminated.

13.     On January 6, 2015, Ms. Miller's superior at PLS Dr. Blaine Roffman ("Dr. Roffman") called Ms. Miller into his office.  Ms. Miller met Dr. Roffman and Rick Noda upon her arrival in Dr. Roffman's office.  Noda had no authority over Ms. Miller at PLS and he had no reason to be in Dr. Roffman's office at that time other than to intimidate Ms. Miller into compliance.

14.     Dr. Roffman and Noda informed Ms. Miller that she was being demoted from her position as Histology Supervisor and she was being replaced.  Dr. Roffman stated, "A new guy is taking your place on Monday, so clear out your desk."

15.     PLS informed Ms. Miller only that she would have the same job duties as the employees she previously supervised.   Her pay remained the same for three (3) months after the demotion, but she was no longer paid on a salaried basis and instead PLS paid her on an hourly basis after the demotion.

16.     PLS hired Jason Gerriets ("Gerriets") to replace Ms. Miller as Histology Supervisor.  Gerriets is a male and under age 40 years when PLS hired him.  PLS started Gerriets' salary as PLS' Histology Supervisor at $78,000.00.  In contrast, Ms. Miller's ending salary as PLS' Histology Supervisor was $62,920.00.  She never earned a higher annual salary than that amount in any prior year.     17.     PLS required that its employee in the Histology Supervisor position have a certificate from the Board of Registry.  position.  Ms. Miller held such a certificate while serving as PLS' Histology Supervisor.  Before PLS hired Gerriets, however, PLS revised the Histology Supervisor job requirements and removed the Board Certification, specifically because Gerriets was not certified.

18.     On April 24, 2015, PLS conducted Ms. Miller's 60-day review of her performance in her demoted position.  In that review, PLS informed Ms. Miller PLS was cutting her wages by $4.25 per hour.

19.     On May 15, 2015, Ms. Miller gave PLS two-weeks' notice that she was resigning.  Ms. Miller believed she was forced to resign due to PLS' continued harassment, intimidation and discrimination on the basis of her age and sex.  Her last day at PLS was May 29, 2015.

20.     Ms. Miller timely filed with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC") her charge of age discrimination and sex discrimination against PLS.  The NEOC rendered its final decision on Ms. Miller's charge on April 15, 2016.  The EEOC issued its Right to Sue letter on May 26, 2016.  (A true and correct copy of the EEOC Right to Sue letter is attached as Exhibit A, and incorporated by this reference).

## PLS DISCRIMIATED AGAINST CHERYL A. MILLER BASED ON HER AGE.

21.     PLS discriminated against Ms. Miller on the basis of her age. PLS violated The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, *et seq.*, as Amended ("ADEA"), and Section 48-1004 of the Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. §§ 48-1004, *et seq.* ("NADEA").

22.     The ADEA prohibits discrimination by employers against employees who are over 40 years of age.

> It shall be unlawful for an employer-
>
> (1) to fail or refuse to hire or to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or]
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age[.]

29 U.S.C. § 623(a) (1), (2).

4

23.   Likewise, Nebraska law prohibits age discrimination against employees aged 40 or more.  According to Section 48-1004, the Age Discrimination in Employment Act,

> (1) It shall be an unlawful employment practice for an employer:
>
> (a) To refuse to hire, to discharge, or otherwise to discriminate against any individual with respect to the employee's terms, conditions, or privileges of employment, otherwise lawful, because of such individual's age, when the reasonable demands of the position do not require such an age distinction[.]

Neb. Rev. Stat. § 48-1004(1) (a).

24.   PLS' actions, statements and treatment of Ms. Miller show PLS violated state and federal law by discriminating against her, harassing her, intimidating her and forcing her to leave the company.  *See* 29 U.S.C. §§ 623, *et seq.*; Neb. Rev. Stat. §§ 48-1004, *et seq.*

### CLAIM I

### PLS' VIOLATED BOTH
### <u>FEDERAL & NEBRASKA ADEA</u>
### (29 U.S.C. § 623; Neb. Rev. Stat. § 48-1004 *et seq.*)

25.   Ms. Miller incorporates by reference Paragraphs 1-24, inclusive, as if fully set forth.

26.   Ms. Miller can establish each of the elements of a prima facie case of age discrimination: (1) is a member of a protected age group, (2) was performing his job at a level that met his employer's legitimate expectations, (3) was demoted, and (4) was replaced by a younger person.  *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915 (8th Cir. 2000).

27.   The ADEA "does not require that advanced age and substantial length of service *entitle* employees to special favorable consideration; it requires an employee within the protected age group not be the subject of discrimination because of his or her

age." *Cova v. Coca-Cola Bottling Co. of St. Louis*, 574 F.2d 958, 960 (8th Cir. 1978) (emphasis added).[1]

28.    A transfer constitutes a demotion or adverse employment action when the transfer results in a significant change in working conditions or a diminution in the transferred employee's (1) title, (2) salary, or (3) benefits. *Fisher*, 225 F.3d at 919.

29.    Next, the employer must articulate a legitimate non-discriminatory reason for not promoting plaintiff.  Plaintiff bears the ultimate burden by rebutting the employer's proffered rationale and demonstrating the stated reason is a pretext.

30.    To meet this burden, plaintiff may show either that the "employment decision more likely than not was motivated by a discriminatory reason or by showing that the employer's proffered reason is unworthy of credence." *Bell v. Bolger*, 708 F.2d 1312, 1318 (8th Cir. 1983).

31.    Here, Ms. Miller's allegations satisfy the prima facie elements.  She is 56-years old, and thus a member of the protected class under the ADEA and NADEA.  She performed her job as a Histology Supervisor at a satisfactory level for nearly 9 years.  Ms. Miller was never disciplined for her work during her employment as PLS' Histology Supervisor.  Her written evaluations show she was performing at satisfactory and superior levels.

32.    PLS demoted Ms. Miller from Histology Supervisor and intimidated her into complying with the demotion.  Ms. Miller did not ask for either a transfer or demotion.  Moreland instilled in management such low regard for Ms. Miller that PLS never even bothered to provide her with a new job title for her demoted position.  Only three months after PLS demoted Ms. Miller, PLS gave a 60-day review of her demoted position and cut her pay by $4.25 per hour.

33.    PLS demoted Ms. Miller by (1) removing and replacing her as the Histology Supervisor, and (2) reducing her salary in her demoted position.  *See* ¶ 28, *supra*.  PLS hired Gerriets, a male in his 30's, to replace her as Histology Supervisor.  Gerriets is not

---

[1] The Nebraska Supreme Court has held that the analysis applied by federal courts under the ADEA also applies to state law claims under the NADEA.  *See Allen v. AT&T Technologies, Inc.*, 423 N.W.2d 424, 228 Neb. 503 (Neb. 1988).

only younger than Ms. Miller, Gerriets was not certified by the Board of Registry, which was previously a job requirement of the PLS Histology Supervisor.

34.     Through PLS' actions of demoting Ms. Miller and forcing her to resign, are undisputed evidence that PLS forced her out due to her age.  Ms. Miller performed her duties as the Histology Supervisor at a satisfactory/superior level and was never disciplined during her career at PLS.  PLS spontaneously demoted Ms. Miller from her position and hired a significantly younger and less qualified replacement for Ms. Miller.  PLS went so far as to alter the job requirements for the Histology Supervisor position in order to bring in the younger male replacement.  *See*, *e.g.*, ¶ 17, *supra*.

WHEREFORE, Plaintiff Cheryl A. Miller requests judgment ordering an award of damages pursuant to 29 U.S.C. § 623, *et seq.*, and Neb. Rev. Stat. §§ 48-1004 and 1119(4) based on PLS discriminatorily demoting her due to her age.

## PLS DISCRIMINATED AGAINST
## MS. MILLER BASED ON HER SEX

35.     Ms. Miller incorporates by reference Paragraphs 1-34, inclusive, as if fully set forth.

36.     PLS discriminated against Ms. Miller on the basis of her sex and violated Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.*, as Amended ("Title VII"), Section 48-1104(1) of the Nebraska Fair Employment Practice Act, as Amended ("NFEPA"), The Equal Pay Act of 1963, 29 U.S.C. § 206(d), as Amended ("Equal Pay Act"), and Section 48-1221 of the Equal Pay Act of Nebraska ("EPAN").

37.     According to Title VII, it is unlawful for an employer –

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex, * * *; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's * * * sex * * *.

7

42 U.S.C. § 2000e-3(a) (1991).[2]

38.     Pursuant to The Equal Pay Act, no employer shall:

discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1) (2007).[3]

39.     PLS' actions and treatment of Ms. Miller, particularly PLS' higher salary paid to Gerriets, her male replacement as Histology Supervisor, plainly demonstrate PLS violated federal law and Nebraska state law by discriminating against Ms. Miller on the basis of her sex.  *See* 42 U.S.C. § 2000e-3(a) (1991); Neb. Rev. Stat. § 48-1104 (Reissue 1993); 29 U.S.C. § 206(d)(1) (2007); *and* Neb. Rev. Stat. § 48-1221 (1969).

**CLAIM II**
**PLS' VIOLATED FEDERAL & NEBRASKA**
**DISCRIMINATION LAWS & THE EQUAL PAY ACT**
**(42 U.S.C. § 2000e-3(a); Neb. Rev. Stat. § 48-1104;**
**29 U.S.C. § 206(d)(1); Neb. Rev. Stat. § 48-1221)**

40.     Ms. Miller incorporates by reference Paragraphs 1-39 inclusive, as if fully set forth.

41.     To state a *prima facie* case of sex discrimination under Title VII, Ms. Miller must show: "(1) that [she] is within the protected class; (2) that she was qualified to perform her job; (3) that she suffered an adverse employment action; and (4) that nonmembers of her class (persons…of the opposite gender in the Title VII sex

---

[2] Section 48-1104 of the NFEPA mirrors the language of the Title VII, 42 U.S.C. § 2000e-3(a). *See* Neb. Rev. Stat. § 48-1104 (Reissue 1993).
[3] Section 48-1221 of the EPAN mirrors the language of the Equal Pay Act, 29 U.S.C. § 206(d)(1).  *See* Neb. Rev. Stat. § 48-1221 (1969).

discrimination context) were not treated the same." *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999).

42.     The purpose of Title VII, as explained in *Keathley v. Ameritech Corp.*, 187 F.3d 915 (8th Cir. 1999), "is to demonstrate that an 'adverse employment action occurred under circumstances which [give] rise to an inference of unlawful discrimination.'" *Keathley*, 187 F.3d at 921 (quoting *Wilson v. International Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995) (quotation marks omitted). Moreover, "[t]he *prima facie* case is 'generally sufficient to raise "an inference of discrimination only because the Court presumes an employer's decisions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."'" *Id.* (quoted references omitted). The Eighth Circuit has modified the final element of a *prima facie* case of discrimination to be that the plaintiff "suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Allen v. Interior Constr. Servs., Ltd.*, 214 F.3d 978, 980 (8th Cir. 2000).

43.     Ms. Miller suffered ongoing disrespect, harassment, and intimidation from PLS' management. PLS' Director of Marketing Moreland, who was not Ms. Miller's supervisor, made business decisions that frustrated Ms. Miller's job performance and embarrassed her in front of the employees she supervised and her own supervisors. Moreland ordered equipment Ms. Miller did not need or require, ridiculed Ms. Miller by continually controlling access to PLS' President and Director and instigating Ms. Miller's termination.

44.     Despite Ms. Miller's nearly nine (9) years of satisfactory/superior performance, Moreland's disgraced Ms. Miller in front of her supervisors. On January 6, 2015, Rick Noda and Ms. Miller's boss Dr. Roffman informed Ms. Miller she was being demoted from Histology Supervisor. Noda, LIS administrator in the PLS IT Department, had no authority over Ms. Miller, was present only to intimidate Ms. Miller into acquiescence with the decision to demote her.

45.     Rick Noda, Dr. Roffman, and the rest of PLS' managerial staff had so little respect for Ms. Miller PLS did not provide her a new job title for her demoted position. Ms. Dr. Roffman told Ms. Miller to do the job duties of her previous subordinates. However, PLS cut Ms. Miller's salary by $4.25 just a few months after PLS demoted her.

9

46.     Perhaps the clearest example of PLS' discriminatory conduct is its hiring of Jason Gerriets to replace Ms. Miller as Histology Supervisor.  Gerriets, a male age in his 30s, did not have a certificate from the Board of Registry, which was a formal job requirement when Ms. Miller held the position.  PLS eliminated the certificate requirement so it could hire Gerriets as Histology Supervisor.  Ms. Miller's salary at the time of her demotion was $62,920.00.  Gerriet's starting salary when PLS hired him to replace Ms. Miller was $78,000.00.  The discriminatory conduct against Ms. Miller is indefensible when considering PLS paid the newly-hired Gerriets a 24% higher salary than PLS paid Ms. Miller.

47.     After Gerriets resigned from his position as Histology Supervisor, ILS replaced him with a female whose annual salary was $65,000.

## EQUAL PAY ACT

48.     Ms. Miller incorporates by reference Paragraphs 1-47, inclusive, as if fully set forth.

49.     To state a *prima facie* case of sex discrimination under the Equal Pay Act, "an employee must prove that her employer discriminated on the basis of sex by paying different wages to men and women who performed equal work."  *Brown v. Fred's, Inc.*, 494 F.3d 736, 740 (8th Cir. 2007).

50.     "'Equal work' means work 'on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Brown*, 494 F.3d at 740 (quoting 29 U.S.C. § 206(d)(1)).

51.     Ms. Miller worked for PLS as the Histology Supervisor for nearly 9 years before PLS demoted her.  Ms. Miller's annual salary prior to her demotion was $62,920.00.  PLS then hired Gerriets, a male much younger than Ms. Miller, to replace her as Histology Supervisor.  Gerriets' starting salary was $78,000.00—24% higher than Ms. Miller's salary despite Gerriets being less qualified and far less experienced.

52.     PLS amended the job requirements for the Histology Supervisor position just to hire Gerriets.  Despite this, the job duties when Ms. Miller held the position were the same as when Gerriets held the position.  Moreover, the necessary skill, effort, and responsibility to perform the job at a satisfactory level were the same.

10

53.    The only significant differences before and after PLS demoted Ms. Miller were the differences between the individuals holding the Histology Supervisor position. Prior to Ms. Miller's demotion, the Histology Supervisor was a nine -year female employee who performed the job at a satisfactory/superior level, and earned $62,920.00 annually. PLS replaced Ms. Miller and replaced her with a male Histology Supervisor was, who was paid $78,000.00 annually.

WHEREFORE, Plaintiff Cheryl A. Miller requests judgment ordering an award of damages pursuant to 42 U.S.C. § 2000e-3(a), Neb. Rev. Stat. § 48-1104, 29 U.S.C. § 206(d)(1), and Neb. Rev. Stat. § 48-1221 based on PLS' discrimination against her due to her sex.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff CHERYL A. MILLER requests judgment in her favor, awarding:

1.    Damages for Ms. Miller's lost and future wages due to PLS' discriminatory treatment of her;

2.    Damages for Ms. Miller's emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life due to PLS' discrimination and harassment;

3.    Damages for Ms. Miller's out-of-pocket expenses for physical and mental health treatment;

4.    Punitive damages for PLS' knowing violation of federal discrimination laws;

5.    Costs and attorney fees; as allowed by law, and

6.    Further relief as the Court deems appropriate.

**PLAINTIFF MAKES DEMAND FOR TRIAL BY JURY.**

Date:  June 7, 2016

**CHERYL A. MILLER**, Plaintiff,

By: _/s/ Terry A. White_____
Terry A. White, NE Bar #18282
**CARLSON & BURNETT, LLP**
17525 Arbor Street
Omaha, Nebraska 68130
Direct: (402) 682-8006
Main: (402) 934-5500
terry@carlsonburnett.com

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

 **EXHIBIT A**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To:  Cheryl A. Miller <br> ███████ | From:  St. Louis District Office <br> 1222 Spruce Street <br> Room 8.100 <br> Saint Louis, MO 63103 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **32E-2015-00472** | **Joseph J. Wilson,** <br> **State & Local Program Manager** | **(314) 539-7816** |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

- [X] More than 180 days have passed since the filing of this charge.

- [ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

- [X] The EEOC is terminating its processing of this charge.

- [ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

- [X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

- [ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*signature*

James R. Neely, Jr.,
**Director**

May 26, 2016
(Date Mailed)

Enclosures(s)

cc:

PHYSICIANS LABORATORY SERVICES, INC
c/o A. Stevenson Bogue
MCGRATH NORTH
1601 Dodge St, Ste 3700
Omaha, NE 68102

Terry A. White
CARLSON & BURNETT
17525 Arbor St
Omaha, NE 68130